IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACY CHARLES, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIONS BEHAVIORAL HEALTH | : | |
| SERVICES, INC., ET AL. | : | NO. 17-2439 |

**MEMORANDUM**

**Padova, J.**                                                                                      **October 9, 2018**

In this putative collective action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), Plaintiffs Tracy Charles, Shanna Griffin, and Antonio Simon assert that their employers, Defendants Progressions Behavioral Health Services, Inc. and Progressions Companies, Inc., failed to pay them overtime wages to which they were entitled. Currently pending are (1) "Plaintiffs' Motion to Proceed as a Collective Action and Facilitate Notice under 29 U.S.C. § 216(b)," in which Plaintiffs seek conditional certification as a collective under the FLSA and ask that notice of this action be sent to similarly situated persons, and (2) Plaintiffs' "Motion for Equitable Tolling." We held a Hearing on the Motion to Proceed as a Collective Action and Facilitate Notice on September 5, 2018. For the following reasons, we grant both Motions.

**I.   BACKGROUND**

The three named Plaintiffs -- Tracy Charles, Shanna Griffin and Antonio Simon -- are current employees of Defendants and work for Defendants both as Behavioral Health Workers ("BHWs") and Therapeutic Staff Support ("TSS"). (FAC ¶¶ 2, 35-40; Charles Decl. ¶¶ 2-3; Griffin Decl. ¶¶ 2-4; Simon Decl. ¶¶ 2-3.) As BHWs, Plaintiffs provide clinical behavioral health services for clients in Defendants' School Therapeutic Services Department, assisting clinicians in providing behavioral modification and crisis management services. (First Amended Collective

and Class Action Complaint ("FAC") ¶ 42.)   As TSS, Plaintiffs provide clinical behavioral health services for clients of Defendants' Behavioral Health Rehabilitation Services Department, helping to implement treatment plans.   (Id. ¶ 43.)

During their employment, Plaintiffs have regularly worked more than forty hours per week, but have not been paid overtime wages of 1.5 times their regular rate of pay for those hours they worked in excess of forty per week.   (Id. ¶ 2; see, e.g., Charles Decl. ¶¶ 6, 8-9, 12, 14, 21.) Plaintiffs assert that there were two reasons for Defendants' failure to pay Plaintiffs overtime. (FAC ¶ 2.)   First, Defendants did not aggregate Plaintiffs' hours in their two positions (BHW and TSS) but, instead, calculated Plaintiffs' hours in the two positions separately for overtime purposes.   (Id.; Charles Decl. ¶¶ 14, 22; Griffin Decl. ¶¶ 15, 24; Simon Decl. ¶¶ 14, 23.)   Second, Defendants did not pay Plaintiffs for certain work it deemed "non-billable," such as time spent traveling, mandatory job training, completing paperwork, submitting reports on Defendants' client management software, and interacting with clients by phone or email.   (FAC ¶¶ 2, 21; Charles Decl. ¶¶ 8, 10, 21; Griffin Decl. ¶¶ 9, 11, 23; Simon Decl. ¶¶ 8, 10, 22.)   Because Defendants failed to pay Plaintiffs for non-billable time, Plaintiffs' non-billable time was not added to the total hours worked for overtime purposes, and Plaintiffs were deprived of overtime pay for those weeks in which their billable and non-billable hours combined exceeded 40 hours.   (Charles Decl. ¶¶ 12-13; Griffin Decl. ¶¶ 13-14; Simon Decl. ¶¶ 12-13.)   Plaintiffs assert that neither of these reasons for denying them overtime pay was legitimate and that Plaintiffs were therefore denied overtime pay to which they were entitled under the FLSA.

There is record evidence that Defendants have acknowledged their alleged failures to pay certain overtime.   On April 25, 2017, Lori Santos, the Corporate Director of Human Resources for Progressions Companies, sent an email to Plaintiffs and other employees, in which she announced the company's plans to institute a new payroll process, the purpose of which was "[t]o

ensure that non-exempt employees are paid for all worked time including non-billable activities." (Pls.' Mem. in Supp. of Mot. to Proceed as Collective Action ("Pls,' Mem") Exs. A-B; Charles Decl. ¶ 15; Griffin Decl. ¶ 17; Simon Decl. ¶ 16.)  An April 12, 2017 policy and procedure memorandum pronounced that employees would be able to begin documenting their time spent performing "non-billable activities" through a program called Etime, beginning on May 20, 2017. (Pls.' Mem. Ex. B; Charles Decl. ¶¶ 16-17; Griffin Decl. ¶¶ 17-18; Simon Decl. ¶¶ 16-17.)  The new policy provided that employees would be paid at a rate of $7.50/hour for all time considered "non-billable."  (Pls.' Mem. Exs. B-C.)  In its Policy and Procedure Manual, Defendants explained that, because "billable work" was typically paid at a different rate, overtime pay owed for a combination of billable and non-billable work would be based on a blended rate.  (Pls.' Mem. Ex. B.)  On May 10, 2017, in a memo to "All Field Staff" reminding employees of the new policy, Ms. Santos stated that, because the new system would not be available to record non-billable time prior to May 22, 2017, the company was asking employees "to review any records [they had] and to address best practice for submitting amounts due for non-billable work performed prior to the April 12, 2017 policy and up to the date of 5/7/2017."  (Pls.' Mem. Ex. C at 1; Charles Decl. ¶ 17; Griffin Decl. ¶ 19; Simon Decl. ¶ 18.)  An accompanying table clarified that BHWs and TSS were permitted to submit non-billable hours dating back to May 7, 2015 only. (Pls.' Mem. Ex. C at 2.)  Ms. Santos stated that the company was "committed to ensuring that all employees are paid for hours worked, including non-billable work, in accordance with its current policies and applicable law."  (Id. at 1.)

During the same time frame, i.e., in May 2017, Plaintiffs received a memo from Ms. Santos, enclosing checks purporting to compensate them for "certain hours recorded beyond a 40 hour workweek" for which they had been paid straight time rather than time and a half "from April 4, 2015 through the present date."  (Charles Decl. ¶ 18; Griffin Decl. ¶ 20; Simon Decl. ¶ 19; Pls.'

3

Mem. Exs. D, F.)  Plaintiffs understood that "multiple" checks were issued to "BHWs and/or TSS who were similarly impacted" by the wage and hour policies that are at issue in this litigation. (Charles Decl. ¶¶ 19-20; Griffin Decl. ¶¶ 21-22; Simon Decl. ¶ 20-21.)  However, all three Plaintiffs also understood that the checks did not include (1) all of the overtime compensation that they were owed for "billable work," or (2) liquidated damages under the FLSA.  (Charles Decl. ¶ 19; Griffin Decl. ¶ 21; Simon Decl. ¶ 20.)

Relying on this evidence, the three named Plaintiffs assert that there are similarly-situated employees who, like them, are or have been employed as BHWs and/or TSS, and have not been paid overtime in violation of the overtime requirements of the FLSA.[1]  Plaintiffs estimate that there are in excess of 100 similarly-situated individuals, and state that the precise numbers must be ascertained using Defendants' payroll and personnel records.  (FAC ¶ 22.)  Plaintiffs seek to represent these similarly-situated individuals and propose that these potential opt-in plaintiffs can be notified of their opportunity to join in the collective action by direct mail.  (Pls.' Mem at 21.) Plaintiffs assert that Defendants' policies and practices have affected Plaintiffs and the expected opt-in plaintiffs in the same fashion.  (FAC ¶ 23.)

Specifically, in their Motion to Proceed as a Collective Action, Plaintiffs seek to maintain this action alleging FLSA violations against Defendants on behalf of the following FLSA Collective:

> All persons presently or formerly employed by Defendant[s] in the positions of Behavioral Health Worker and/or Therapeutic Staff Support who worked at least

---

[1] The FLSA requires employers to pay employees no less than the federally mandated minimum wage for all hours worked up to and including 40 hours per week, and also requires employers to pay one and one-half times their regular pay rate for all hours worked over 40 in a given workweek.  See 29 U.S.C. §§ 206 (minimum wage provision), 207 (overtime provision). The FLSA provides that an "employer who violates the [overtime] provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

thirty-two (32) hours of "billable" work in two (2) or more workweeks from May 30, 2014 to the present.[2]

(Pls.' Mot. to Proceed as Collective Action at 1.)[3]

We held a Hearing on the Motion to Proceed as a Collective Action and Facilitate Notice on September 5, 2018. During that argument, Plaintiffs requested, for the first time, that we equitably toll the statute of limitations applicable to potential opt-in plaintiffs' claims for the time in which the collective action Motion has been pending. (N.T. 9/5/18, at 18-19.) We requested that the parties brief the issue, and we have subsequently received Plaintiffs' Motion for Equitable Tolling and Defendants' opposition thereto.

## II. MOTION FOR CONDITIONAL CERTIFICATION

### A. Legal Standard

Plaintiffs have moved for conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b). "Collective actions brought under the FLSA are governed by § 216(b), which provides for an opt-in procedure for plaintiffs desiring to be included in the litigation." Harrison v. DelGuerico's Wrecking & Salvage, Inc., 305 F.R.D. 85, 87 (E.D. Pa. 2015) (citing 29 U.S.C. § 216(b)). "There are two requirements for potential plaintiffs to be included in the collective action: plaintiffs must (1) be 'similarly situated' and (2) give written

---

[2] Plaintiffs explain that they have defined the class to include those with at least 32 hours of billable time per week under the theory that for each hour of billable time, employees typically perform about 18 minutes of non-billable work. Thus, anyone working 32 hours of billable time would likely exceed the 40 hour/week threshold when considering both billable and non-billable time (32 hours billable plus an estimated 9.6 hours non-billable, for a total of 41.6 hours) and, thus, would have been entitled to overtime.

[3] The Motion to Proceed as a Collective Action and Facilitate Notice was filed before Plaintiffs amended their Complaint to add Defendant Progressions Companies, Inc. as a joint employer. Accordingly, although the Motion, as written, only seeks to pursue a collective action against Defendant Progressions Behavioral Health Services, Inc., in light of the subsequently-filed FAC, we consider it as seeking to proceed against both Defendants, as joint employers.

5

consent." Id. (citing 29 U.S.C. § 216(b)). "However, the 'similarly situated' standard for employees to proceed collectively under the FLSA is not defined by the statute." Id. at 88 (citing Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66 (2013)). "The FLSA also does not provide specific procedures by which potential plaintiffs may opt in, but the Supreme Court has held that 'district courts have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs.'" Id. (alterations in original) (quoting Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989)). Moreover, "'once a[n] [FLSA] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.'" Id. (second alteration in original) (quoting Hoffman-La Roche, 493 U.S. at 171).

The United States Court of Appeals for the Third Circuit has adopted a two-step approach for certification of a collective action pursuant to 29 U.S.C. § 216(b). Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 535-36 (3d Cir. 2012). "During the initial phase, which is conducted early in the litigation process when the court has minimal evidence, 'the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff.'" Harrison, 305 F.R.D. at 88 (quoting Symczyk, 656 F.3d at 192). "'[I]f the plaintiff carries [his] burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery.'" Id. (quoting Symczyk, 656 F.3d at 192). However, "'conditional certification' is not really a certification. It is actually 'the district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under [the] FLSA." Zavala, 691 F.3d at 536 (first and third alterations in original) (quoting Symczyk, 656 F.3d at 194). "'After discovery,

6

and with the benefit of a much thicker record than it had at the notice stage, a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" Harrison, 305 F.R.D. at 88 (quoting Symczyk, 656 F.3d at 193). "If the plaintiff carries his heavier burden during the second phase 'the case may proceed to trial as a collective action.'" Id. (quoting Symczyk, 656 F.3d at 193).

As other district courts in this Circuit have explained, in the first step, the "Plaintiff must make 'a modest factual showing that the similarly situated requirement is satisfied.'" Titchenell v. Apria Healthcare Inc., Civ. A. No. 11-563, 2012 WL 3731341, at *3 (E.D. Pa. Aug. 29, 2012) (quoting Bosley v. Chubb Corp., Civ. A. No. 04-4598, 2005 WL 1334565, at *3 (E.D. Pa. June 3, 2005)). "Without evaluating the merits of plaintiff's case, the Court must determine 'whether plaintiff's proposed class consists of similarly situated employees who were collectively the victims of a single decision, policy, or plan.'" Id. (quoting Lugo v. Farmer's Pride Inc., Civ. A. No. 07-749, 2008 WL 638237, at *3 (E.D. Pa. Mar. 7, 2008)). Thus, "[u]nder this standard, 'a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.'" Sawyer v. Health Care Solutions at Home, Inc., Civ. A. No. 16-5674, 2018 WL 1959632, at *3 (E.D. Pa. Apr. 25, 2018) (quoting Symczyk, 656 F.3d at 193); see also Drummond v. Herr Foods, Inc., Civ. A. No. 13-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015) (same). "However, this remains a lenient burden." Harrison, 305 F.R.D. at 88 (citing Smith v. Sovereign Bancorp Inc., Civ. A. No. 03–2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003); and Resch v. Krapf's Coaches, Inc., Civ. A. No. 11-6893, 2012 WL 2500623, at *3 (E.D. Pa. June 29, 2012)). "Further, the merits of plaintiff's claims need not be evaluated in order for notice to be approved and disseminated." Id. (citing Resch, 2012 WL 2500623, at *3; and

7

Chabrier v. Wilmington Fin., Inc., Civ. A. No. 06-4176, 2006 WL 3742774 (E.D. Pa. Dec. 13, 2006)).

### B. Discussion

Plaintiffs argue that they have satisfied the lenient conditional certification requirement that they make a modest factual showing that they are similarly situated to, and share common legal claims with, the potential opt-in plaintiffs**.**  As detailed in the facts set forth above, Plaintiffs have submitted, inter alia, (1) declarations from the three named Plaintiffs, which state that they were negatively affected by Defendants' wage and hour policies and that they understood that other employees were similarly affected by those policies; (2) an inter-office memo from Ms. Santos to "All Field Staff" and other inter-office documents that together acknowledge that Defendants were not properly compensating staff for non-billable hours; and (3) memos from Ms. Santos enclosing checks to Plaintiffs Charles and Griffin, acknowledging Defendants' failure to provide them overtime pay for billable hours worked over forty, along with the Plaintiffs' declarations that "multiple such checks [were] issued to BHWs and/or TSSs who were similarly impacted by the wage and hour violations."  (Pls.' Mem. Exs. C, D & F; Charles Decl. ¶ 20; Griffin Decl. ¶ 22; Simon Decl. ¶ 21.)  Based on this evidence, in conjunction with the other evidence of record, we conclude that Plaintiffs have, in fact, met their burden of making a "'modest factual showing'" that the similarly situated requirement is satisfied, as they have submitted proof that the putative collective members were together "the victims of a single decision, policy, or plan," Titchinell, 2012 WL 3731341, at *3 (quotations omitted), and they have "'produce[d] some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees,'"  Sawyer, 2018 WL 1959632, at *3 (quotation omitted).   See also Morrow v. Cty. of

8

Montgomery, Civ. A. No. 13-1032, 2014 WL 348625, at *3 (E.D. Pa. Jan. 31, 2014) (noting that plaintiff's burden of making a modest factual showing is a "lenient standard").

In opposing certification, Defendants primarily argue that the proposed collective is not limited to individuals who are "similarly situated" to Plaintiffs because it will include individuals who worked exclusively as BHWs or TSS, not only those who worked simultaneously as BHWs and TSS as all three Plaintiffs did. However, the proposed collective, as defined and limited by Plaintiffs, is plainly designed to identify employees who likely worked non-billable hours that, combined with their billable hours, exceeded the forty-hour per week threshold for overtime compensation. It is irrelevant whether such employees, like Plaintiffs, worked simultaneously as BHWs and TSS or, instead, worked only as BHWs or TSS. Rather, based on the evidence presented, it appears that Defendants' policies and procedures with regard to non-billable hours similarly affected all employees who worked as BHWs and/or TSS and worked more than 40 combined billable and non-billable hours in a week. While the proposed collective includes any individuals who worked simultaneously as BHWs and TSS, and were denied proper overtime payment for billable hours worked in those two capacities, that group is simply a subset of the proposed collective, which will include anyone who likely worked more than 40 hours per week. Under these circumstances, contrary to Defendants' suggestion, we conclude that it would be inappropriate to limit the collective to only those who worked simultaneously as BHWs and TSS, because such a limitation would improperly exclude many potential class members who were negatively affected by Defendants' policies with respect to non-billable hours while they worked only as either BHWs or TSS. We thus conclude that, to the extent that the proposed collective includes employees working as BHWs or TSS, it is properly defined to identify similarly-situated individuals, and we reject Defendants' argument to the contrary.

Defendants also argue that we should deny Plaintiffs' motion to proceed collectively because the claims of the proposed members of the collective are not amenable to proof by common evidence but, rather, will be dependent upon each employee's individualized circumstances. Defendants contend that, among other factual differences, some prospective collective members accepted Defendants' Spring of 2017 offer to be compensated for their non-billable time and/or have already been compensated in full for their billable time. Courts in this Circuit, however, have generally granted conditional certification in spite of factual differences among named Plaintiffs and potential opt-in plaintiffs, preferring to leave resolution of any factual differences to the second stage of the certification process. See, e.g., Drummond, 2015 WL 894329, at *4 (stating that the "assertion that individual . . . inquiries will be necessary to decide the legal issues in this case are best left for the second stage of FLSA collective action" (citing Burkhart-Deal v. Citifinancial, Inc., Civ. A. No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010)); Burkhart-Deal, 2010 WL 457127, at *3 ("[A] defendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process." (citations omitted)). Consequently, we will not reject conditional certification simply because the claims of Plaintiffs and opt-in plaintiffs may ultimately be dependent upon individualized proof.[4]

---

[4] Defendants also argue that the proposed collective improperly includes individuals who did not work in Philadelphia and, thus, are not similarly situated to Plaintiffs, all three of whom worked in Defendants' Philadelphia office. However, their argument in this regard is undeveloped and, in any event, the record indicates that Defendants' overtime policies concerning the counting of non-billable hours were the same in all of Defendants' offices. (See Pls.' Mem. Ex. C (announcing new policy regarding non-billable hours to "All Field Staff," including staff in Philadelphia, Trevose, Pottstown, and Reading)). Thus, we believe that Plaintiffs have met their burden of producing a modest factual showing that the BSWs and/or TSS in Defendants' non-Philadelphia offices are similarly-situated to Plaintiffs. Accordingly, we reject this basis for denying conditional certification.

Defendants also object to the notice that Plaintiffs have proposed be sent to prospective opt-in plaintiffs. First, they argue that the notice should be limited to those who assert claims within the FLSA's two-year statute of limitations, because the evidence does not support Plaintiffs' contention that any violation was willful.[5] Second, they argue that the proposed notice should include language that alerts prospective collective members that they may be liable for Defendants' costs of suit if Defendants are the prevailing parties. However, we will not restrict notice to a two-year statute of limitations period where, as here, Plaintiffs have alleged that Defendants acted willfully in violating the FLSA (FAC ¶ 97), and there has not yet been full discovery into the merits of Plaintiffs' claims. See Chung v. Wyndham Vacation Resorts, Inc., Civ. A. No. 14-490, 2014 WL 4437638, at *4 (M.D. Pa. Sept. 9, 2014) ("'Whether Defendant['s] violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. Facts regarding willfulness must be explored during discovery, and the [Defendant] may challenge the three-year statute of limitations at a later date.'" (alterations in original) (quoting Gallagher v. Lackawanna Cty., Civ. A. No. 07-912, 2008 WL 9375549, at *9 (M.D. Pa. May 30, 2008)); Gallagher, 2008 WL 9375549, at *9 ("The allegation of willfulness in Plaintiffs' Complaint . . . is sufficient to justify notice based on the three-year statute of limitations period." (citations omitted)); Mavrinac v. Emergency Med. Ass'n of Pittsburgh (EMAP), Civ. A. No. 04-1880, 2007 WL 2908007, at *9 (W.D. Pa. Oct. 2, 2007) ("Whether there has been a willful violation of the [FLSA] . . . is a question of fact to be determined by the fact finder by examining the evidence at trial." (citation omitted)). Rather, we approve Plaintiffs'

---

[5] The FLSA's statute of limitations provides that actions to recover unpaid overtime compensation based on non-willful violations must be commenced "within two years after the cause of action accrued" and actions to recover unpaid overtime compensation based on willful violations must be commenced within three years of accrual. 29 U.S.C. § 255(a); see also 29 U.S.C. § 256(b) (stating that, for an opt-in plaintiff, an action is commenced as of the date on which he or she files written consent to become a party plaintiff).

11

proposed notice insofar as it presently anticipates the application of the three-year statute of limitations applicable to willful FLSA violations. In addition, we reject Defendants' argument that the notice should include a warning that opt-in plaintiffs may ultimately be liable for Defendants' costs, as such a warning is unnecessarily intimidating and may chill otherwise valid participation in the collective. See Williams v. Cargill Meat Sols. Corp., Civ. A. No. 09-1006, 2010 WL 2643405, at *2 (E.D. Wis. June 30, 2010) (denying defendant's request that notice advise potential plaintiffs of possible liability for costs, stating that such notice would "chill participation" (citations omitted)); Lujan v. Cabana Mgmt., Inc., Civ. A. No. 10-755, 2011 WL 317984, at *11 (E.D.N.Y. Feb. 1, 2011) (rejecting request that notice advise prospective plaintiff that they may be liable for costs due to "'the remote possibility that such costs . . . would be other than de minimis'" and "the risk of 'an in terrorem effect that is disproportionate to the actual likelihood' of significant costs" (quoting Guzman v. VLM, Inc., Civ. A. No. 07-1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (additional citation omitted).

For all of these reasons, we grant Plaintiffs' Motion to Proceed as Collective Action and Facilitate Notice and approve the proposed Notice submitted with the Motion.

### III.    Motion for Equitable Tolling

In the Motion for Equitable Tolling, Plaintiffs request that we equitably toll the statute of limitations applicable to opt-in plaintiffs' claims "from the date Plaintiffs' Motion for Conditional Certification was fully-briefed (i.e. February 19, 2018) until the elapse of the deadline provided for in Plaintiff's proposed Class Notice for the submission of Opt-in Consent Forms (i.e. forty-five (45) days from the mailing of notice)." (Pls.' Mem. in Supp. of Mot. for Equitable Tolling at 8.) Defendants oppose any equitable tolling.[6]

---

[6] Notably, we approved the parties' stipulations tolling the statute of limitations for claims of opt-in plaintiffs from May 30, 2017 to December 1, 2017 (183 days), and for an additional 36

As noted above, the FLSA contains a statute of limitations which is either two or three years, depending on whether the statutory violation is willful.  See supra note 5.  At the same time, we "read [an equitable tolling doctrine] into every federal statute of limitations, including the FLSA."  Vargas v. Gen. Nutrition Ctrs., Inc., Civ. A. No. 10-867, 2012 WL 5336166, at *5 (M.D. Pa. Oct. 26, 2012) (citing Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 193 (M.D. Pa. 2008)) (additional citation omitted).  The equitable tolling doctrine "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'"  Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (quoting Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999)).

The United States Court of Appeals for the Third Circuit has identified "three principal, though not exclusive, situations in which equitable tolling may be appropriate."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).  They are "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.'"  Santos ex rel Beato, 559 F.3d at 197 (quoting Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005), and citing Sch. Dist. v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981)).  Courts both in and outside of the Third Circuit have also concluded that "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance[]' justifying application of the equitable tolling doctrine."

---

days between December 13, 2017 and January 23, 2018.  (See Docket Nos. 19, 21, 29-34.)  Accordingly, they have already agreed to 219 days of tolling and disagree only as to whether additional tolling is warranted following Plaintiffs' filing of their Motion to Proceed as a Collective Action and Facilitate Notice.

Yahraes v. Rest. Assocs. Events Corp., Civ. A. No. 10-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (alteration in original) (citations omitted); see also DePalma v. Scotts Co. LLC, Civ. A. No. 13-7740, 2017 WL 1243134, at *5 (D.N.J. Jan. 20, 2017) (approving and adopting magistrate judge recommendation that court delay alone supported equitable tolling (citing Ornelas v. Hooper Holmes, Inc., Civ. A. No. 12-3106, 2014 WL 7051868, at *4 (D.N.J. Dec. 12, 2014))); Bosley v. Chubb Corp., Civ. A. No. 04-4598, 2007 WL 9604965, at *1 n.1 (E.D. Pa. Feb. 20, 2007) (finding court delay to be one of two factors supporting equitable tolling); but see Alvarez v. BI Inc., Civ. A. No. 16-2705, 2018 WL 2288286, at *15 (E.D. Pa. May 17, 2018) (concluding that court delay alone cannot support equitable tolling as "the passage of time while a conditional certification motion is under consideration is, unfortunately, not 'extraordinary,' but rather a routine aspect of litigation." (citation omitted)). Nevertheless, equitable tolling remains an "extraordinary" remedy that is to be applied "'only sparingly.'" Santos ex rel. Beato, 559 F.3d at 197 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990), and citing Hedges, 404 F.3d at 751). The party seeking to assert equitable tolling bears the burden of demonstrating that such tolling is appropriate. Alvarez, 2018 WL 2288286, at *13 (citing Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006)).

Plaintiffs argue that equitable tolling is appropriate in this case both because of the delay in our ruling on their time-sensitive Motion to Proceed as a Collective Action and Facilitate Notice and because Defendants have communicated with potential opt-in plaintiffs in a way that potentially misled and confused them as to their possible claims. With respect to this latter point, Plaintiffs point to Defendants' communications with their employees, in which Defendants purported to be fully compensating the employees for prior hours recorded beyond a 40 hour workweek for which the employees were not paid overtime (Pls.' Mem Exs. D & F), and communications concerning revisions to Defendants' policies regarding non-billable time, in

which Defendants professed to be instituting remedial measures to fully compensate employees for unpaid non-billable time and overtime in the preceding two years period (Pls.' Mem. Ex. C). Plaintiffs maintain that such communications misled potential opt-in plaintiffs by leading them to believe that any failures to pay them overtime had been remedied, thereby dissuading them from pursuing other remedies to which they were potentially entitled.

Upon consideration of these arguments and Defendants' opposition, we conclude, that, under the special circumstances of this case, equitable tolling is warranted. This is not only because the Motion for Conditional Certification has been pending for almost eight months, through no fault of Plaintiffs, but also because, as Plaintiffs assert, potential opt-in plaintiffs may very well have been dissuaded from pursuing their rights due to Defendants' direct communications with them in the Spring of 2017, very shortly before this action was filed. As Plaintiffs point out, those communications suggested that Defendants were unilaterally resolving any claims concerning overtime pay for the two years prior and thereby implicate concerns that the Defendants may have "actively misled the [potential opt-in] plaintiff[s] respecting [their] cause[s] of action." Santos ex rel Beato, 559 F.3d at 197 (quotation and citation omitted).

In sum, we conclude that the combination of court delay and the Defendants' actions constitute extraordinary circumstances that make equitable tolling appropriate to ensure that potential opt-in plaintiffs are permitted to pursue FLSA claims that circumstances may have unfairly prevented them from recognizing and pursuing. We therefore equitably toll the statute of limitations on the FLSA claim beginning on February 19, 2018, when the Motion for Conditional Certification was fully briefed, and ending on the date of this Memorandum and Order.[7]

---

[7] Plaintiffs ask that the claims be tolled until 45 days after service of the Notice, but we conclude that tolling until the date of the accompanying Order granting the Motion for Equitable Tolling is adequate under the circumstances, for a total period of equitable tolling of 232 days. In

15

## IV. CONCLUSION

For the foregoing reasons, we grant Plaintiffs' Motion to Proceed as a Collective Action and Facilitate Notice and also grant Plaintiffs' Motion for Equitable Tolling. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.

---

conjunction with the parties' contractual tolling of 219 days, <u>see</u> <u>supra</u> note 6, the total tolling period is 451 days.